Judge SiMrsoN
delivered the opinion of the Court.
This action was brought by the owner of a slave to compel the hirer to pay for him on the ground that, by the contract of hiring, the slave was to be employed only in such service as would not expose *319 him to extraordinary danger or risk of health or life, and that, in violation of this agreement of the parties, the hirer had employed him in rafting or floating saw-logs, a business involving great risk and danger to both health and life, and that the slave, whilst thus employed, was drowned.
The defendant contended that he hired the slave for the express purpose of working at his mill; that such was the agreement and understanding of the parties at the time the contract was made ; and that without any negligence or fault on his part the slave was accidentty drowned, whilst engaged in the very service contemplated by the parties at the time he was hired.
The only writing executed at the time of the hiring was a note which was given by the hirer, in the usual form, for the payment of the hire at the end of the year, and which also contained a promise to furnish the slave with usual and customary clothing during the time for which he'was hired.
It is contended that this writing contains the contract of the parties, and that pai’ol testimony is inadmissible to enlarge its terms, or to avoid its legal effect.
If the writing can be regarded as containing the contract of the parties, with respect to the manner in which the slave was to be employed during the term for which he was hired, then this doctrine will no doubt apply, and parol evidence of any other agreement inconsistent with it is not admissible.
The only ground, however, upon which such an effect could be given to it, is that the omission to express in it the service in which the slave was to be employed, furnishes conclusive evidence there was no agreement on the subject, and that in the absence of such an agreement by the parties, the hirer is only authorized to employ the slave-in such service as slaves are ordinarily engaged in, and which is not attended with extraordinary risk or peril to his life or health.
1. The absence of any stipulation in a note given for the hire of a slave, as to the businessabout which the slave is to be employed, leaves that fact open to the introduction of pa rol proof to show how the slave was to be employed. (Jeffrey vs. Walton, 1 StarkieR., 967.)
The waiting does not, according to its import, contain the whole agreement of the parties — it merely regulates the time of hiring and the rate of payment. It is not usual in a note for the hire of a slave to state how, or in what manner, the slave is to be employed; indeed we cannot say that it is ever done, and yet slaves are frequently hired for some special and particular employment. The silence of the note on the subject does not, therefore, in our opinion, prove that there was no agreement of the parties with respect to the business at which the slave was to be employed during the time for which he was hired; and as this part of the agreement was not committed to writing it may be proved by parol testimony. This view is sustained by the case of Jeffrey vs. Walton, 1 Starkie's Report, 267, which was an action brought for not taking care of a horse which the defendant had hired of the plaintiff. At the time of the hiring the following memorandum was made: “Six weeks at two guineas. William Walton, Jun.” Lord Ellenborough treated it as a contract incomplete on its face, and admitted parol evidence that the defendant, at the time of the hiring, agreed to be responsible for all accidents. The writing in that ease expressed the time of hiring' and the rate of payment, but was silent as to the manner in which the horse was to be used, and as to who was to sustain the loss if one should result from accidents, and yet the court held that it was competent for the plaintiff to give in evidence suppletory matter as part of the agreement. The Supreme Court of Alabama seems to have established a different doctrine, (Nave vs. Barry et al., 22 Alabama Reports, 382,) and to have held that where the note for the hire is silent as to the manner in which the slave is to be employed, the contract of hiring must be considered as general in its terms, and as only authorizing the bailee to employ the slave-in any business to which slaves are ordinarily put, and which is not attended with extraordinary risk or peril to his life *321 or health. But this is giving an effect to the note to which, in our opinion, it is not entitled, and construing it to embrace that part of the contract which is seldom, if ever, included in it by the parties.
2. To instruct a jury that “evidence of conversations between the witness and the par ty alone, uncbrroborated by other proof or circumstances, was the weakest testimony held competent by law:” Held, to be improper, and cause of reversal where there was other cor r o borating evidence and circumstances.
The defendant was allowed, by the court below, to introduce testimony to show that the slave was hired to work at his mill; and that such was the understanding of the parties at the time of the hiring. To establish this fact he proved statements of the plaintiff to the effect that the slave had been hired to him for that purpose; and he also proved that the plaintiff had been at the defendant’s mill and saw the slave at work there before he was drowned, and made no objection to his being engaged in that business.
The court, at the instance of the defendant, instructed the jury “that evidence of conversations between the witness and the party alone, uncorroborated by other proof or circumstances, was the weakest testimony held competent by law.” This instruction was inapplicable in the present case. There was other proof tending to corroborate the evidence of such conversations. Evidence of conversations which had been held with the plaintiff on two or three different occasions, one of which was deposed to by two witnesses, was introduced upon the trial; and in addition to this the silence of the plaintiff, when he was at the defendant’s mill, was relied on as corroborating proof. Under these circumstances this instruction was not only inapplicable, but was misleading in consequence of its tendency to weaken and diminish the force and effect of the defendant’s testimony.
The court, at the instance of the plaintiff, also instructed the jury that if the defendant, after the hiring of the slave, employed him in unusal and hazardous services, in which he was lost or killed, and such acts or conduct on the part of the defendant came to the knowledge of the plaintiff, while the slave was so employed, and he remained silent or *322 passive, the defendant himself making to plaintiff no communication of what he had done in reference to the said slave, such silence or passiveness under such circumstances, did not amount to an acquiescence in the conduct or acts of the defendant.
3. The fact that'the hirer of a slave saw him in the performance of a particular kind of service, without objection, tended to show that •such service was contemplated at the time of hiring.
The idea which was intended to be presented to the jury by this instruction is not very clear, but as proof had been introduced that the plaintiff had been at the defendant’s mill, and had seen the slave at work there, and made no objection to his being thus employed, the instruction must be regarded as applying to this fact, and as containing the proposition that such silence or passiveness on the part of the plaintiff did not amount to an acquiescence in the conduct of the defendant, and consequently did not -tend to prove that the slave was hired under an agreement between the parties that he was to he employed in that service. If such be the meaning of the instruction, and we think it must have been so understood by tbe jury, it was evidently incorrect. The silence of the plaintiff on the occasion referred to, did tend to prove his acquiescence in the act of the defendant in employing the slave at his mill, and also tended to prove that such employment was consistent with the contract of hiring. The only circumstance referred to in the instruction which, if believed by the jury, was to render the silence of the plaintiff so inoperative that it should not be evidence against Mm, was the failure of the defendant to communicate to him the service in which the slave was engaged. But the necessity of such a communication is not perceived when the plaintiff, the defendant being present, had himself seen the slave at work •at the mill, and made no objection on that account to the conduct of the defendant. This instruction was therefore also misleading and erroneous.
Wherefore the judgment is reversed, and cause remanded for a new trial and further proceedings consistent with this opinion.