Argued and submitted March 11, 2005, affirmed March 15, petition for review allowed June 20, 2006 (341 Or 140)

Lori Gayle HUGHES,
as Personal Representative of the
Estate of Jill Marie Dieringer, deceased,
*Appellant,*

*v.*

PEACEHEALTH,
a Washington corporation,
dba Sacred Heart Medical Center
and PeaceHealth Medical Group,
*Respondent,*

*and*

EUGENE EMERGENCY PHYSICIANS, P.C.,
an Oregon corporation,
*Defendant.*

16-02-18544; A123782

131 P3d 798

Kathryn H. Clarke argued the cause for appellant. With her on the briefs was Linda K. Eyerman.

Marjorie A. Speirs argued the cause for respondent. With her on the brief was Janet M. Schroer.

Before Linder, Presiding Judge, and Haselton* and Ortega, Judges.

LINDER, P. J.

.

---

* Haselton, J., *vice* Ceniceros, S. J.

### LINDER, P. J.

In this wrongful death action, plaintiff, the personal representative of the decedent's estate, appeals a judgment in her favor following a jury trial. Plaintiff challenges both the trial court's reduction of the jury's award of noneconomic damages and the post-judgment interest rate that the court applied. For the reasons explained below, we affirm.

Plaintiff brought this action against defendant PeaceHealth, a corporation doing business as PeaceHealth Medical Group, on a theory of vicarious liability.[1] In her complaint, plaintiff alleged that three physicians employed by defendant and working at Sacred Heart Medical Center were negligent in providing medical services to plaintiff's daughter and that, as a result, her daughter died. The case was tried to a jury, and the jury found defendant negligent. The jury awarded plaintiff economic damages of $100,000 and noneconomic damages of $1 million.

After the jury returned its verdict, defendant moved to reduce the noneconomic damages to $500,000 pursuant to ORS 31.710(1), which provides generally for a $500,000 cap on noneconomic damages in, among others, wrongful death actions.[2] The trial court granted the motion. Consequently, the court entered an award for $600,000—$100,000 in economic damages and $500,000 in noneconomic damages—in favor of plaintiff. In addition, pursuant to ORS 82.010(2)(f) (discussed below), the trial court ordered that interest would accrue on the judgment "at the rate of the lesser of 5% or 3% above the Federal Reserve Bank discount rate for Oregon."

On appeal, plaintiff raises two assignments of error. In her first assignment, plaintiff argues that the cap on noneconomic damages in ORS 31.710(1) violates two provisions of the Oregon Constitution: Article I, section 10, which guarantees the right to a full and complete remedy, and Article I,

---

[1] In her complaint, plaintiff also named Eugene Emergency Physicians, P.C., as a defendant, but the jury returned a verdict finding negligence only on the part of PeaceHealth. Accordingly, any references to defendant are to PeaceHealth.

[2] The trial court referred to ORS 18.560(1) (1987) in its judgment. Because that statute was renumbered as ORS 31.710 in 2003, we refer to the latter provision, which is identical to *former* ORS 18.560.

section 17, which guarantees the right to trial by jury.[3] In her second assignment of error, plaintiff argues that the trial court applied the wrong interest rate. We address each in turn.

■ We begin with plaintiff's constitutional challenge to the statutory cap on noneconomic damages. ORS 31.710(1) provides:

> "Except for claims subject to ORS 30.260 to 30.300 [the Oregon Tort Claims Act] and ORS chapter 656 [the Workers' Compensation Law], in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000."

As noted, in challenging that cap on her noneconomic damages, plaintiff first argues that reducing a damage award consistently with the cap violates the Remedies Clause of Article I, section 10. The Oregon Supreme Court's decision in *Greist v. Phillips,* 322 Or 281, 906 P2d 789 (1995), however, is directly on point and specifically held to the contrary. That is, in *Greist,* the court explicitly held that the application of the statutory cap on noneconomic damages in wrongful death actions does not violate the Remedies Clause. Plaintiff takes issue with the court's holding in *Greist,* arguing in detail that one of its premises—that Oregon did not recognize a common-law wrongful death action—is incorrect. But whether that premise was correct or not—a proposition on which we express no view—the fact remains that *Greist* squarely rejected it. Because *Greist* squarely held that a statutory cap on noneconomic damages in a wrongful death action does not violate Article I, section 10, we are bound by that holding.[4]

---

[3] Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

Article I, section 17, of the Oregon Constitution provides:

"In all civil cases the right of Trial by Jury shall remain inviolate."

[4] In *Greist,* the court considered *former* ORS 18.560(1), which, as noted above, 204 Or App at 616 n 2, is identical to ORS 31.710.

*See Schiffer v. United Grocers, Inc.*, 143 Or App 276, 284, 922 P2d 703 (1996), *rev'd on other grounds*, 329 Or 86, 989 P2d 10 (1999) ("We are not in the business of overruling decisions of the Oregon Supreme Court.").[5] Accordingly, we reject plaintiff's Article I, section 10, argument without further discussion.

■      Plaintiff next argues that the statutory cap violates Article I, section 17. *Greist*, again, is on point—the Supreme Court also considered and rejected the argument that a statutory cap on noneconomic damages deprives a plaintiff in a wrongful death action of the right to jury trial secured by Article I, section 17. 322 Or at 295. Plaintiff acknowledges that portion of *Greist*'s holding but contends that it did not survive the court's later decision in *Lakin v. Senco Products, Inc.*, 329 Or 62, 987 P2d 463 (1999). Although we ultimately conclude that we are bound by *Greist*, plaintiff's argument that *Lakin* draws into question the continuing viability of *Greist* merits more extended discussion. We begin by examining the rationale for the court's Article I, section 17, conclusion in *Greist*, and then we turn to an examination of *Lakin*.

■      In *Greist*, the Supreme Court began its Article I, section 17, analysis by quoting the general rule as the court had described it in *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 295, 744 P2d 992 (1987): "[A] jury trial is guaranteed only in those classes of cases in which the right was customary at the time the constitution was adopted or in cases of like nature." *Greist*, 322 Or at 293 (internal quotation marks omitted). The court then reiterated its previously settled understanding that, "[i]n Oregon, * * * the right of action for wrongful death is statutory," *id.* at 294, and that at " 'common law no remedy by way of a civil action for wrongful death existed.' " *Id.* (quoting *Richard v. Slate*, 239 Or 164, 167, 396 P2d 900 (1964)).[6] "Therefore," the court explained, "at the

---

[5] *See Fields v. Legacy Health System*, 413 F3d 943, 961 (9th Cir 2005) (Gould, J., concurring) ("The Oregon Supreme Court and its intermediate appellate courts have consistently held that there was no common law right to recover for wrongful death. * * * [T]he Oregon Supreme Court has not expressly overruled its prior precedent, and we are not at liberty to alter a state's established case law on a state law issue.").

[6] *See Storm v. McClung*, 334 Or 210, 222 n 4, 47 P3d 476 (2002) ("Since at least 1891, this court has adhered to the view that no right of action for wrongful death existed at common law.").

time Article I, section 17, was adopted, no right existed for a trial by jury for a wrongful death action." *Id.*

Relying on the language from *Molodyh*, the plaintiff in *Greist* pointed out that the right to a jury trial applies not only to cases in which it existed in 1857, but also to cases "of like nature." The plaintiff then urged that a wrongful death action is "of like nature" to a personal injury action—an action that did exist at common law. *Id.* It followed, according to the plaintiff in *Greist*, that Article I, section 17, guarantees a jury trial on all issues in a wrongful death action, including noneconomic damages. *Id.*

The Supreme Court responded that its analysis was unaffected by that argument:

> "Even accepting the premise that a wrongful death action is 'of like nature' to a personal injury action, plaintiff's argument would not prevail. When Article I, section 17, and the constitution were adopted, a jury's determination of the amount of damages to be awarded in tort actions was not protected from judicial alteration."

*Id.* The court explained that, before the adoption in 1910 of Article VII (Amended), section 3, of the Oregon Constitution, "Oregon trial courts were empowered to exercise their discretion and set aside jury verdicts and grant new trials for excessive damages found by a jury, or to order a remittitur of the excess as a condition to denying a motion for a new trial." *Id.* at 294-95. In words that it later would disavow in *Lakin*, the court reasoned:

> "*Until* the adoption of Article VII (Amended), section 3, in 1910, trial courts were empowered to reduce jury awards of damages when the courts believed that those awards were excessive. That fact, in itself, disposes of plaintiff's argument that there existed at common law, at the time Article I, section 17, was adopted in 1857, a right to have a judge enter judgment on a jury's award of damages—without judicial alteration—in a personal injury action."

*Greist*, 322 Or at 295 (emphasis in original). The court rejected the plaintiff's Article I, section 17, argument as "not well taken." *Id.*

Several years after its decision in *Greist*, the Supreme Court decided *Lakin*. Of significance, *Lakin* was a products liability personal injury case, not a wrongful death case, as *Greist* had been. The court allowed review in *Lakin* to consider whether *former* ORS 18.560(1)—the same statute at issue in *Greist* and, as noted, the predecessor to ORS 31.710(1), the statute at issue here—violates Article I, section 17. In the course of an extensive analysis of the history of Article I, section 17, the court addressed the language quoted above from *Greist*. Describing that language as *dicta*, the *Lakin* court determined that the *dicta* were wrong and "requir[ed] correction," explaining:

> "Oregon trial courts never have had the power to reduce a jury's verdict or to enter judgment for a lesser amount of damages over the objection of the prevailing party, who always could reject a judicial remittitur and demand a new jury trial. *See Adcock v. Oregon Railroad Co.*, 45 Or 173, 181, 77 P 78 (1904) (in an action for personal injuries, the court may order a remission of part of the damages awarded by the jury, but only as a condition of overruling a motion for a new trial)."

329 Or at 76-77. Having disavowed that *dicta* from *Greist,* the court in *Lakin* concluded that "Article I, section 17, prohibits the legislature from interfering with the full effect of a jury's assessment of noneconomic damages, at least as to civil cases in which the right to jury trial was customary in 1857, or in cases of like nature." *Id*. at 78.

Plaintiff argues that the "*dicta*" that were corrected by *Lakin* were central to *Greist*'s conclusion that wrongful death actions do not include a right to trial by jury. It was that corrected language, plaintiff asserts, that "allowed the *Greist* court to avoid completely the question whether a [wrongful death action] is 'of like nature' to a tort action for injuries short of death." Plaintiff urges that, in light of the *Lakin* court's disavowal of *Greist*'s reasoning, *Greist* no longer can be understood to have resolved whether wrongful death actions are "of like nature" to tort actions for personal injury. In effect, according to plaintiff, that issue is again an open question, one that we are free to resolve unconstrained by *Greist*'s holding.

Plaintiff's point is an interesting one. Reconciling *Greist* and *Lakin* poses at least an apparent conundrum. The *explicit* rationale that *Greist* articulated for rejecting the "like nature" prong of the plaintiff's challenge was that, even if a wrongful death action was like a personal injury action, no absolute jury trial right existed at common law on the issue of economic damages. Later, in *Lakin*, the court determined that it had been wrong in that regard. At first blush, that later determination would seem to reopen the question that *Greist* had resolved.

And it may indeed reopen that question for the Supreme Court. But we do not agree that it reopens it for us. There is, to begin with, a fundamental difference between *Lakin* and *Greist*. *Lakin* was a personal injury action, not a wrongful death action. The Article I, section 17, issue therefore arose in *Lakin* in the context of an action that unquestionably existed when Article I, section 17, was enacted. That difference between the two cases informs *Lakin*'s description of the disavowed portion of *Greist* as *"dicta."* The court emphasized in *Lakin* that, "because of the common-law origins of plaintiffs' [personal injury] claims here, *Greist* is distinguishable." *Lakin*, 329 Or at 77. In other words, according to the Supreme Court, *Greist*'s rejection of the "like nature" argument was based on the different treatment of wrongful death and personal injury actions at common law. Although *Greist* may not have made that point explicitly, it suggested it. The court in *Greist* began its now-disavowed analysis with the qualification "[e]*ven accepting* the premise that a wrongful death action is 'of like nature' to a personal injury action." 322 Or at 294 (emphasis added). The emphasized language suggested that the court's further discussion was intended to be an alternative analysis, one that, as the court later observed in *Lakin*, was not necessary to its holding.

Whatever else the court may have held or said in *Lakin*, fundamentally, it did not overrule *Greist*. It explicitly distinguished *Greist* and left its holding fully intact. The court in *Greist* had before it the same argument that plaintiff makes here—*i.e.*, that a wrongful death action is "of like nature" to a personal injury action. The court reached and

rejected that argument. If the court had rejected that argument without any discussion, it would bind us as surely as if the court had devoted 20 pages of analysis to rejecting it.

In short, despite *Lakin*, we conclude that *Greist* remains controlling on whether there is a right to a trial by jury on the issue of noneconomic damages in a wrongful death action. *Greist* holds that there is no such right and that the statutory cap on noneconomic damages in ORS 31.710(1) in such an action therefore does not violate Article I, section 17, of the Oregon Constitution. We adhere to that holding.

We turn to plaintiff's second assignment of error—that the trial court incorrectly applied the interest rate specified in ORS 82.010(2)(f) to the money award. That paragraph provides:

> "The rate of interest on a judgment rendered in favor of a plaintiff in a civil action to recover damages for injuries resulting from the professional negligence of a person licensed by the Board of Medical Examiners * * * is the lesser of five percent per annum or three percent in excess of the discount rate in effect at the Federal Reserve Bank in the Federal Reserve district where the injuries occurred."

Plaintiff makes three arguments as to why that interest rate should not apply in this case. First, plaintiff argues that the interest rate applies only to "judgments for plaintiffs in civil actions to recover damages for 'injuries.' " According to plaintiff, if the legislature had intended the subsection to apply in actions to recover damages for wrongful death it would have used the word "death" in addition to "injuries" in the text of the provision: "The legislature's failure to use the word 'death' or make any apparent reference to 'death' in the text of the statute suggests that the legislature did not intend to include 'death' in ORS 82.010(2)(f)."

In interpreting statutes, it is our task to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To do so, we first look to the text and context of the statutory provision as the best evidence of the legislature's intent. *Id.* When examining text, we apply the rule that "words of common usage typically should be given their plain, natural, and ordinary meaning." *Id.* at 611. In examining statutory context, we may

look to the text of other relevant statutory provisions. *Id.*; *Liberty Northwest Ins. Corp. v. Stapleton*, 192 Or App 312, 318, 84 P3d 1116 (2004).

■ Plaintiff's first argument fails under that analysis. The concept embodied by the word "injury" embraces more than mere physical injuries and includes "a violation of another's rights for which the law allows an action to recover damages * * *." *Webster's Third New Int'l Dictionary* 1164 (unabridged ed 2002). A plaintiff in a wrongful death action seeks to recover for precisely that, *i.e.*, a violation of another's rights for which the law allows recovery. In common usage, then, "damages for injuries" includes awards in a wrongful death action.

■ Moreover, the wrongful death statute itself provides further support for the conclusion that ORS 82.010(2)(f) applies to amounts recovered in wrongful death actions. ORS 30.020(1) provides that a wrongful death action may be maintained only "if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury[.]" That statute also requires generally that the action be commenced "within three years after the injury causing the death of the decedent is discovered[.]" As defendant explains, "[t]he legislature clearly considers a wrongful death action to provide recompense for *injuries* leading to death * * *." (Emphasis in original.) We therefore conclude that the reduced rate of interest in ORS 82.010(2)(f) applies to judgments in wrongful death actions by reason of the legislature's use in that statute of the word "injury."

Plaintiff's second argument is also based on the text of ORS 82.010(2)(f). Specifically, plaintiff submits that the statute does not apply to judgments based on the vicarious liability of corporate entities because the "legislature did not use the word 'entity' or 'corporate entity' in describing the applicability of the statute[.]" Plaintiff concludes that, to interpret the statute otherwise, would be to "extend[ ] the protection of this statute to parties not specifically named."

Again, the express text of the statute provides the answer. By its terms, the statute provides for a reduced rate of interest on a judgment in a "civil action to recover damages for injuries resulting from the professional negligence of"

licensed physicians and nurses. The statute's application does not hinge on the identity of the defendant in the action. Rather, the legislature made the statute applicable to a class of actions consisting of ones that arise from the negligence of specified individuals—*i.e.*, health care providers—regardless of who is named as the defendant. In other words, the reduced interest rate is triggered by who is *negligent*, not by who is *liable* for that negligence. That is so as a matter of the plain language of the statute.

■       The basis for plaintiff's claim here was exactly what the statute contemplates. Plaintiff sought damages in a civil wrongful death action for injuries that were caused by the negligence of physicians in providing medical services. The fact that the judgment held defendant, as the physicians' employer, vicariously liable for that negligence, rather than the physicians themselves, is inconsequential under the statute. We therefore conclude that ORS 82.010(2)(f) applies in wrongful death actions, such as this, where a plaintiff brings an action against a defendant for the negligence of a physician on a theory of vicarious liability.

■       Plaintiff's final challenge to the application of ORS 82.010(2)(f) is that it violates Article I, section 20, of the Oregon Constitution.[7] In objecting to defendant's form of judgment applying the reduced interest rate, plaintiff asserted in a single sentence that the statute "on its face and as applied violates Article[ ] I, section[ ] 20, of the Oregon Constitution." Plaintiff provided no argument in support of that assertion. She therefore did not preserve her claim for appeal, and we do not consider it. *See, e.g., State v. Toste*, 196 Or App 11, 16, 100 P3d 738 (2004) ("Merely citing a case or a constitutional provision is not sufficient."); *State v. Talbert*, 153 Or App 594, 600, 958 P2d 902 (1998) ("Defendant cited Article I, section 12, in his memorandum to the trial court, but cited no Article I, section 12, cases. * * * Merely citing Article I, section 12, is not sufficient to preserve that issue.").

In sum, we conclude that the reduction of plaintiff's noneconomic damages pursuant to ORS 31.710(1) violated

---

[7] Article I, section 20, provides, "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

neither the Remedies Clause of Article I, section 10, nor the right to a jury trial guaranteed by Article I, section 17, of the Oregon Constitution. We also conclude that the trial court correctly applied the reduced interest rate from ORS 82.010(2)(f) to the judgment rendered against defendant.

Affirmed.