Argued and submitted November 1, 2006, decision of Court of Appeals and judgment of circuit court affirmed February 22, 2008

Lori Gayle HUGHES,
as Personal Representative for the Estate of
Jill Marie Dieringer, deceased,
*Petitioner on Review,*

*v.*

PEACEHEALTH,
a Washington corporation,
dba Sacred Heart Medical Center
and PeaceHealth Medical Group,
*Respondent on Review,*

*and*

EUGENE EMERGENCY PHYSICIANS, PC,
an Oregon corporation,
*Defendant.*

(CC 16-02-18544; CA A123782; SC S053447)

178 P3d 225

Kathryn H. Clarke, Portland, argued the cause and filed the brief for petitioner on review. With her on the brief was Linda K. Eyerman, of Gaylord Eyerman Bradley, PC, Portland.

Marjorie A. Speirs, of Hoffman, Hart & Wagner, LLP, Portland, argued the cause and filed the brief for respondent on review. With her on the brief was Janet M. Schroer.

Barry Adamson, Lake Oswego, filed the brief on behalf of himself as *amicus curiae.*

Maureen Leonard, Portland, and Ned Miltenberg, Center for Constitutional Litigation, P.C., Washington, D.C., filed a brief on behalf of *amicus curiae* Association of Trial Lawyers of America.

Robert K. Udziela, Beaverton, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Judy C. Lucas, Senior Assistant Attorney General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Lindsey H. Hughes, of Keating Jones Bildstein & Hughes, P.C., Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

David L. Runner, Salem, filed a brief on behalf of *amici curiae* SAIF Corporation and Timber Products Company.

David C. Landis, Portland, filed a brief on behalf of *amici curiae* Oregon Medical Association and American Medical Association.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

GILLETTE, J.

Durham, J., dissented and filed an opinion in which Walters, J., joined.

Walters, J., dissented and filed an opinion in which Durham, J., joined.

---

** Carson, J., retired December 31, 2006, and did not participate in the decision of this case. Linder, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

In this wrongful death action, the personal representative of a deceased person challenges the trial court's application of the statutory damages cap set out at ORS 31.710 to the jury's award of damages. Plaintiff argues that, as applied in her case, ORS 31.710 violates two provisions of the Oregon Constitution—the "remedy" guarantee set out in Article I, section 10, and the right to a jury trial set out in Article I, section 17. The Court of Appeals rejected those arguments, along with an additional argument that the trial court had erred in ordering defendant to pay interest on plaintiff's damages award at a lower rate than ordinarily would apply. We allowed the personal representative's petition for review and, for the reasons that follow, affirm the decision of the Court of Appeals.

Plaintiff brought this action against PeaceHealth Medical Group for wrongful death after her daughter died while under the care of certain PeaceHealth medical providers.[1] Plaintiff initially alleged two separate wrongful death claims—one under the common law and one under Oregon's wrongful death statute, ORS 30.020. She later amended her complaint to allege a single wrongful death claim that did not specify a source of law.[2]

After a trial, the jury returned a verdict for plaintiff that included an award of $1 million in noneconomic damages. In the ensuing judgment, the trial court applied ORS 31.710 to reduce the noneconomic damages award to $500,000.[3] In the judgment, the trial court also held that

---

[1] In her complaint, plaintiff also named Eugene Emergency Physicians, P.C., as a defendant. However, the jury found that Eugene Emergency Physicians, P.C., was not negligent, and that entity is not involved in this review proceeding.

[2] Plaintiff originally thought that she had to raise a common-law wrongful death claim, in addition to a statutory claim, to preserve her present constitutional challenge to the statutory cap on noneconomic damages. However, as she explained to the trial court, she ultimately determined that it was unnecessary to allege a common-law claim for that purpose separately, so she chose to leave it out of her amended complaint.

[3] ORS 31.710 provides, in part:

"(1) [With certain specified exceptions], in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort,

interest payable on the damages award was to be calculated using a special lower rate, set out in ORS 82.010(2)(f), for judgments against medical providers in medical malpractice actions.

Plaintiff appealed. She argued that application of the statutory cap on noneconomic damages violated her right to a jury trial under Article I, section 17, of the Oregon Constitution, as well as the Remedy Clause of Article I, section 10. The Court of Appeals affirmed the trial court's application of the damages cap, relying on the fact that, in *Greist v. Phillips,* 322 Or 281, 906 P2d 789 (1995), this court had rejected constitutional challenges to the statutory damages cap that were almost identical to the ones that plaintiff raised. *Hughes v. PeaceHealth,* 204 Or App 614, 617-22, 131 P3d 798 (2006).[4] Plaintiff then sought review by this court, asserting in her petition for review that *Greist* was wrongly decided and that later decisions by this court have placed its continued relevance in doubt. We allowed her petition to consider those arguments, as well as to consider plaintiff's contention that the special interest rate set out at ORS 82.010(2)(f) should not be applied to her award.

## ARTICLE I, SECTION 10

We first consider plaintiff's claim that application of the statutory cap to her wrongful death claim violates the right to a remedy provision of Article I, section 10, of the Oregon Constitution, which provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course

companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000.

"(2)  As used in this section

"* * * * *

"(b)  'Noneconomic damages' means subjective nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment."

[4] The Court of Appeals also rejected plaintiff's claim that the trial court had erred in applying the interest rate specified at ORS 82.010(2)(f). *Hughes,* 204 Or App at 622-24.

of law for injury done him in his person, property or reputation."

The Remedy Clause is the last clause of that provision.

In *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), this court set out a methodology for analyzing Remedy Clause claims under Article I, section 10. The court announced that a claim under the Remedy Clause should be resolved in terms of two questions:

> "[First,] when the drafters wrote the Oregon Constitution in 1857, did the common law of Oregon recognize a cause of action for the alleged injury? If the answer to that question is yes, and if the legislature has abolished the common-law cause of action for injury to rights that are protected by the remedy clause, then the second question is whether it has provided a constitutionally adequate substitute remedy for the common-law cause of action for that injury."

*Id.* at 124.

Plaintiff's first challenge under the foregoing analysis is to establish that the action at issue—an action for the wrongful death of her daughter, seeking damages for, among other things, the deceased's physical and mental suffering before her death and the loss of the deceased's "society, services, love and companionship"—is one that was recognized by the common law of Oregon in 1857. Plaintiff acknowledges that this court has stated on numerous occasions that, in Oregon, wrongful death is an entirely statutory cause of action and has no basis in the common law. *See, e.g.*, *Storm v. McClung*, 334 Or 210, 222 n 4, 47 P3d 476 (2002) (stating proposition); *Kilminster v. Day Management Corp.*, 323 Or 618, 627, 919 P2d 474 (1996) (same); *Goheen v. General Motors Corp.*, 263 Or 145, 151-52, 502 P2d 223 (1972) (same); *Putnam v. Southern Pacific Co.*, 21 Or 230, 231-32, 27 P 1033 (1891) (same). Plaintiff also acknowledges that, in *Juarez v. Windsor Rock Products, Inc.*, 341 Or 160, 169-73, 144 P3d 211 (2006), this court held that, whatever the status of a claim for wrongful death was in 1857, it was clear that the kinds of injuries for which the plaintiffs sought damages in

their action were not an injury done to the plaintiffs' "property" within the meaning of Article I, section 10. Plaintiff contends, however, that *Juarez* is wrong about the scope of the right that Article I, section 10, protects and should be reconsidered. Plaintiff also contends that this court's various statements about the status of wrongful death actions under the common law are contrary to the historical evidence respecting that question and therefore should not be considered binding.

Because it also relates to plaintiff's challenge under Article I, section 17, discussed below—and because plaintiff must win it to prevail—we choose to focus first on plaintiff's argument respecting the status of wrongful death actions in Oregon in 1857. With regard to that issue, plaintiff attempts to show that, contrary to the numerous statements to the contrary in Oregon cases, a common-law action for wrongful death *did* exist in 1857 when Article I, section 10, was adopted.[5]

Plaintiff first suggests that the common law of Oregon in 1857 incorporated Lord Campbell's Act, 9 & 10 Vict, ch 93 (1846), an 1846 English statute that provided that a decedent's administrator had a right of action for the benefit of certain relatives in cases of wrongful death. Plaintiff notes that the 1844 provisional legislature adopted "the statute laws of the Iowa Territory" as well as

"the common law of England and principles of equity, not modified by the statutes of Iowa or of this government, and not incompatible with its principles."

Laws of a General and Local Nature Passed by the Legislative Committee and Legislative Assembly [of the Oregon Provisional Legislature], p 100 (1853). Plaintiff further notes that, when Congress established the Oregon Territory in 1848, the laws of the provisional government were carried forward[6] and that the territorial laws were carried forward, in turn, in 1859, under Article XVIII, section 7, of the Oregon

---

[5] Certain of the historical arguments that we describe are more properly attributed to various *amici* who have filed briefs in support of plaintiff's position. For the sake of simplicity, we identify those arguments as plaintiff's.

[6] Act of August 14, 1848, to Establish the Territorial Government of Oregon, § 14, in General Laws of Oregon, pp 75-76 (Deady 1845-1864).

Constitution. Plaintiff contends that, given that succession of enactments and the fact that the Oregon Territory was governed jointly by Great Britain and the United States until 1848, it is clear that the organic laws of Great Britain up to that date—including Lord Campbell's Act—were incorporated into this state's common law at the time of statehood.

The difficulty with the foregoing argument is that this court has taken a different view of those enactments with respect to the relationship between this state's common law and the historical organic law of England. The court has stated that, when "our territorial legislature and the framers of our Constitution and our courts recognized the existence [in Oregon] of the common law, they must have had reference to that law as it existed, *modified and amended by the English statutes passed prior to the [American] Revolution."* *Peery v. Fletcher*, 93 Or 43, 53, 182 P 143 (1919) (emphasis added). *See also In re Estate of Moore*, 190 Or 63, 70, 223 P2d 393 (1950) (citing *Peery* for same proposition); *United States F. & G. Co. v. Bramwell*, 108 Or 261, 264, 217 P 332 (1923) (same). And it necessarily follows that English statutes enacted *after* the American Revolution (as was Lord Campbell's Act), were not in 1857 and are not now part of Oregon's common law.

Plaintiff also argues that the common-law status of wrongful death in Oregon is evident from a more general examination of English and American legal history. She begins by examining the origins of the aforementioned "rule" followed in Oregon and most other American jurisdictions that there was no common-law action for wrongful death. She notes that there is wide agreement, at least modernly, that the rule arose out of a single judge's ill-considered *dictum* in a minor 1808 English decision, *Baker v. Bolton*, 1 Camp 493, 170 Eng Rep 1033 (1808). She further notes that that *dictum* apparently was based on the so-called "felony merger" doctrine, a peculiar feature of eighteenth and nineteenth century English law.[7] Plaintiff then observes that the felony

---

[7] In essence, the felony merger doctrine held that, when a wrongful act simultaneously constituted a tort and a felony, a private action seeking damages for injuries caused by the tortious act merged into the Crown's prosecution of the felony. The doctrine was, perhaps, an acknowledgment of the realities of the early English justice system: A convicted felon forfeited his property to the Crown, leaving

merger doctrine has been widely criticized and that, in *Moragne v. State Marine Lines*, 398 US 375, 90 S Ct 1772, 26 L Ed 2d 339 (1970), the United States Supreme Court expressly rejected it in the context of a maritime forfeiture proceeding.

On the affirmative side, plaintiff points to the ancient Germanic practice, employed in early England, of requiring monetary reparation to the victim's family for a wrongful killing. Plaintiff acknowledges that, at least for a while in England, the emergence of felony merger doctrine stifled that early practice. She argues, however, that the felony merger doctrine ultimately was rejected in England and that it *never* was followed in the American states—never, at least, until 1848, when the Supreme Judicial Court of Massachusetts adopted it rather suddenly in *Carey v. Berkshire R. Co.*, 55 Mass (1 Cush) 475 (1848). After *Carey*, plaintiff asserts, courts in other American jurisdictions "blindly" followed *Carey*, pronouncing as an article of faith that wrongful death actions had no basis in the common law.

Plaintiff contends, however, that there is a significant body of evidence showing that, before *Carey*, American courts *did* recognize common-law wrongful death claims. In support of that argument, plaintiff commends to this court a list of cases that, in her view, exemplify that characterization of earlier American law. Plaintiff's list of cases, however, is not persuasive. Most of them involve actions by slaveowners in Southern states seeking damages for the negligently caused death of a slave. Those cases did not involve actions for wrongful death in the present sense but, instead, were actions asserting tortious conversion of, or damage to, "property." *See, e.g., Brunson v. Martin*, 17 Ark 270 (Ark 1856) (master of slave was entitled to bring action against overseer to recoup damages for value of slave who died as a result of overseer's "negligent" handling of slave rebellion), *Western v. Pollard*, 55 Ky 315 (Ky App 1855) (master of slave who drowned while employed by contractor could pursue common-law negligence action for value of slave's services).

---

nothing for private suitors to collect in damages. *Moragne v. States Marine Lines*, 398 US 375, 382-84, 90 S Ct 1772, 26 L Ed 2d 339 (1970).

Many of the remaining cases—cases from the Massachusetts Court of Assistance in the late seventeenth century—suggest only that some death cases of an unspecified nature ended with the defendant being ordered to pay some amount to the victim's survivors.[8] And, while a few of the cases on which plaintiff relies show that *some* courts were willing to entertain a man's action for the loss of the services of his son or wife,[9] those cases provide an insufficient basis for a conclusion that a parent's action seeking damages for mental suffering, loss of society, and similar injuries caused by the wrongful death of a child was or would have been recognized under the common law of early nineteenth century America.

What the evidence *does* suggest is that the colonial, state, and local courts in early America often did manage to arrange for some kind of compensation by persons or entities responsible for a wrongful death to the decedent's survivors. But, before those somewhat haphazard arrangements had coalesced into a clearly defined common-law civil action for wrongful death, various state legislatures stepped into the breach and began to enact legislation explicitly providing for wrongful death actions. With those statutory enactments, efforts to develop a common law of wrongful death came to a halt. As one commentator has suggested, the sudden and almost universal conversion of American courts in the mid-nineteenth century to the rule of *Baker v. Bolton* was in direct response to the nearly contemporaneous trend toward providing a statutory wrongful death remedy: Quite simply, courts were reluctant to recognize a common-law remedy that might compete with their states' newly adopted wrongful death statutes. *See* Wex S. Malone, *The Genesis of Wrongful Death*, 17 Stan L Rev 1043, 1068-73 (1965). The same commentator goes on to speculate that, "[h]ad the several state legislatures remained insensitive to the death

---

[8] Plaintiff refers to a group of early Massachusetts cases summarized in Wex S. Malone, *The Genesis of Wrongful Death*, 17 Stan L Rev 1043, 1063-65 (1965).

[9] For example, the Connecticut Superior Court held in 1794 that a husband had a cause of action against a surgeon for malpractice resulting in the death of the husband's wife. *Cross v. Guthery*, 2 Root 90, 1 Am Dec 61 (Conn Super 1794). In *Ford v. Monroe*, 20 Wend 210 (NY Sup 1838), the Supreme Court of the Judicature of New York held that a father could sue in negligence to recover the value of the services of his minor son, who had been killed when the defendant's servant had run over him while driving the defendant's gig.

problem, thus obliging the courts to face it in an open field, it can be surmised that a common-law death action of some kind would have unfolded on the American scene." *Id.* at 1073.

What, then, can we conclude about the status of an action for wrongful death under the common law as it existed in 1857, when the drafters of the Oregon Constitution included the Remedy Clause in the Oregon Constitution? Can we conclude that the evidence of scattered efforts by courts in other jurisdictions to provide some compensation in cases of negligently caused death is sufficient to meet the first requirement under the *Smothers* test, 332 Or at 124, for a Remedy Clause violation—*i.e.*, that, "when the drafters wrote the Oregon Constitution in 1857, * * * the common law of Oregon recognize[d] a cause of action for the alleged injury[.]"? In the end, we do not think that we can. In that regard, we note that plaintiff actually is asking for two things: First, she asks us to conclude that a cause of action for wrongful death existed in 1857; then, however, she immediately seeks to avoid a statutory limitation on her claim on the ground that the limitation is contrary to the common law, as it existed before 1857, that pertained to her injury. History will not stand that strain. Even if we were to accept the notion that there was some general movement in the common law of the early nineteenth century that might, had it been left alone, eventually have grown into a common-law recognition of a wrongful death action, there is no basis for us further to conclude that the common law would have recognized the particular cause of action that plaintiff now asserts—an action seeking damages for *all* injuries occasioned by the wrongful death of a family member, including mental suffering and loss of society and care, without limitation of any kind. In the end, plaintiff has failed to persuade us that the statutory damages cap at ORS 31.710 abolishes a remedy that was available at common law when Article I, section 10, was drafted. It follows that, under *Smothers*, plaintiff does not have a right to the "remedy" that she seeks under Article I, section 10.

## ARTICLE I, SECTION 17

■ We turn to plaintiff's contention that, as applied to her wrongful death action, ORS 31.710 violates the right to

jury trial guaranteed by Article I, section 17, of the Oregon Constitution. As noted, this court considered—and rejected— an almost identical argument in *Greist*. Plaintiff contends, however, that, in light of certain more recent cases, *Greist* no longer is good law.

In *Greist*, as in the present case, the trial court applied the damages cap at ORS 31.710[10] to reduce a jury's noneconomic damages award in a wrongful death action brought under ORS 30.020. The plaintiff challenged the reduction as a violation of both Article I, section 17, and Article VII (Amended), section 3,[11] of the Oregon Constitution, on the theory that the cap interfered with the jury's assessment of an issue of fact that, under the foregoing provisions, was reserved to the jury. This court held that the right to a jury trial guaranteed by Article I, section 17, did not pertain to wrongful death actions. The court noted, first, that, under a long line of cases, Article I, section 17, applied " 'only in those classes of cases in which the right was customary at the time the constitution was adopted or in cases of like nature.' " *Greist*, 322 Or at 293 (quoting *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 295-96, 774 P2d 992 (1987)). The court cited authority to the effect that wrongful death actions in Oregon are purely statutory, and then observed that Oregon's first wrongful death statute was adopted in 1862— five years *after* the Oregon Constitution was written. The court concluded that, because there was no wrongful death action—common law or statutory—when the constitution

---

[10] When *Greist* was decided in 1995, the statute presently codified as ORS 31.710 was codified as ORS 18.560.

[11] Article I, section 17, is an original provision of the Oregon Constitution, adopted in 1857, and provides: "In all civil cases the right of Trial by Jury shall remain inviolate."

Article VII (Amended), section 3, was added to the constitution by means of a 1910 initiative. It provides, in part:

"In actions at law, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

In *Greist*, this court held that nothing in Article VII (Amended), section 3, "restricts the legislature's authority to set a maximum recovery in statutory wrongful death actions." 322 Or at 297. Plaintiff does not challenge that holding or otherwise rely on Article VII (Amended), section 3.

was drafted and adopted, no right to a jury trial of such an action could have existed at that time. *Greist*, 322 Or at 294.

This court also concluded in *Greist* that, even if Article I, section 17, *did* apply to the wrongful death action at issue, it would not affect the noneconomic damages cap because Article I, section 17, had never included a right to *unfettered* determination of damages by a jury. That was so, we reasoned, because, when Article I, section 17, was adopted, "a jury's determination of the amount of damages to be awarded in tort actions was not protected from judicial alteration." *Id.*

As plaintiff in the present case is quick to point out, however, this court disavowed the latter statement from *Greist* in *Lakin v. Senco Products, Inc.*, 329 Or 62, 987 P2d 463 (1999). The court noted in *Lakin* that:

> "Oregon trial courts never have had the power to reduce a jury's verdict or to enter judgment for a lesser amount of damages over the objection of the prevailing party, who always could reject a judicial *remittitur* and demand a new jury trial."

*Id.* at 76 (emphasis in original). In fact, this court concluded in *Lakin* that, as applied in an ordinary common-law negligence action, the damages cap at issue violated Article I, section 17, because it interfered with a plaintiff's right to have a jury assess damages—including noneconomic damages—in such actions. Notably, the court suggested that *Greist* was "distinguishable" from *Lakin* because, unlike the common-law negligence action at issue in the latter case, the wrongful death action at issue in *Greist* "was not one recognized at common law or under the Oregon Territorial Law when Article I, section 17, was adopted." *Id.* at 77.

We continue to adhere to that view: *Lakin* and *Greist* are distinguishable from each other precisely because, as is true here, *Greist* was a wrongful death case, the parameters of which are subject to legislative adjustment from time to time. Plaintiff contends, however, that *Greist* does not confront the idea, expressed in some of this court's earlier cases, that the jury trial right that Article I, section 17, guarantees is not confined to the class of cases in which it was customary

in 1857, but also applies to cases "of like nature." *See State v. 1920 Studebaker Touring Car et al*, 120 Or 254, 251 P 701 (1927) (using that standard).

Based on *1920 Studebaker* and later cases that describe Article I, section 17, in similar terms, plaintiff argues that her wrongful death action is "of like nature" to an ordinary common-law personal injury action. In that regard, she argues:

> "This is a medical negligence action and, in terms of liability, the same proof is required as would have been necessary had [the deceased] survived but been permanently injured by the defendant's failure to diagnose and treat her appropriately. The only distinction between this wrongful death action and a personal injury action based on the same liability facts is the nature of some of the damages, *i.e.*, the parents' loss of their daughter's 'society, services, love and companionship'."

And, plaintiff argues, because her wrongful death action is like a personal injury action, she has the same right to a jury determination of damages, *unfettered by legislative or judicial interference,* that a plaintiff in an ordinary personal injury action enjoys under this court's Article I, section 17, decision in *Lakin.*

■       We disagree. Plaintiff's expansive claim clearly conflicts with a principle that this court often has invoked in the context of recent cases arising under Article I, section 17—that "Article I, section 17, is not a source of law that creates or retains a substantive claim or a theory of recovery in favor of any party." *Jensen v. Whitlow*, 334 Or 412, 422, 51 P3d 599 (2002); *see also Lawson v. Hoke*, 339 Or 253, 267, 119 P3d 210 (2005) (quoting *Jensen*); *DeMendoza v. Huffman*, 334 Or 425, 446, 51 P3d 1232 (2002) (same). Under that rule, plaintiff is entitled to a jury's determination of her damages, both in type and amount, only to the extent that the substantive law, *i.e.*, the statute, pertaining to her claim so provides.

■       We need not further discuss the holding in *Lakin* to conclude that the state of affairs with respect to wrongful death actions is—and always has been—quite different from the common-law claim at issue in that case. As discussed above, the view expressed by this court in previous cases—

that wrongful death in Oregon is purely statutory and has no secure basis in the common law as it existed in 1857—is correct. Stated differently, in 1857, there was no clear common-law tradition with respect to the necessary elements of a wrongful death action, or who might bring such an action, or what sorts of damages would be recoverable, should such a cause of action be recognized. That is, in *Lakin* terms, there was no common-law rule defining the damages for wrongful death at all, much less one that identified the amount that would compensate a plaintiff for injuries resulting from the wrongful act. The legislature therefore retained the authority to define the right to recover for wrongful death, the authority to decide who could recover, and the authority to establish the nature of the damages that were recoverable. The legislature did no more.

When the Oregon legislature enacted a law in 1862 providing that the wrongful death action belonged to the deceased person's personal representative, and that the cause of action was for "injury done by the same act or omission that would have supported an action by the deceased, had he or she lived," and that "damages therein shall not exceed five thousand dollars," General Laws of Oregon, Civ Code, ch IV, title VI, § 367, p 187 (Deady & Lane 1843-1872), it was defining the action—including the measure of damages—on a clean slate. No issue arose respecting trial by jury, because that has always been, as a matter of practice, the way such cases had been tried.[12] That fact notwithstanding, it should not be surprising that no one challenged the $5,000 limitation in the statute as inconsistent with Article I, section 17: Because wrongful death plaintiffs had no preexisting substantive common-law right to compensation for *any* injuries resulting from the wrongful act, they could not argue that the $5,000 limitation interfered with the jury's unfettered determination of their damages.

For precisely the same reason, plaintiff cannot today argue that the noneconomic damages cap at ORS 31.710 violates her right to an unfettered jury determination of damages: Because the common law does not, and did not in 1857,

---

[12] No separate question arises respecting trial by jury in this case, inasmuch as plaintiff had such a trial. Moreover, so far as we are aware, wrongful death cases always have been tried to a jury.

recognize a right to unlimited damages in wrongful death actions, the only relevant source of substantive law respecting damages is the statutory law, which expressly places a cap on noneconomic damages. Thus, any right to a jury trial that plaintiff might have under Article I, section 17, cannot confer a right to a jury award of a kind or amount of damages that is contrary to that *statutory* law.[13] We conclude, in short, that the damages cap at ORS 31.710 does not violate Article I, section 17, of the Oregon Constitution.

## THE INTEREST STATUTE

■ We come, finally, to plaintiff's argument that the trial court erred in ordering defendant to pay interest on plaintiff's damages award at a lower rate than ordinarily would apply.

In general, money judgments are subject to a nine percent per annum interest rate under ORS 82.010(2). However, there are some exceptions to that nine percent rate, including the one set out at ORS 82.010(2)(f):

> "The rate of interest on a judgment rendered in favor of a plaintiff in a civil action to recover damages for injuries resulting from the professional negligence of a person licensed by the Board of Medical Examiners * * * is the lesser of five percent per annum or three percent in excess of the discount rate in effect at the Federal Reserve Bank in the Federal Reserve district where the injuries occurred."

After the jury returned its verdict for plaintiff, defendant submitted a form of judgment specifying the interest rate set out in ORS 82.010(2)(f) as the applicable rate. Plaintiff objected and submitted her own form of judgment, specifying a nine percent interest rate. The trial court accepted and entered defendant's form of judgment, implicitly rejecting plaintiff's objections to the reduced interest rate. On appeal, plaintiff assigned error to the trial court's application of the reduced interest rate on statutory and constitutional

---

[13] It is precisely that point—that Article I, section 17, is not a source of *substantive* law, that the dissenting opinions fails to appreciate. Statements to that effect in *Jensen, Lawson,* and *DeMendoza* wholly defeat the contrary argument in both dissents.

grounds, but the Court of Appeals affirmed the trial court. 204 Or App at 622-24.

Before this court, plaintiff argues, first, that ORS 82.010(2)(f) does not apply to her money judgment against defendant because her action was not one to "recover damages for *injuries* resulting from professional negligence" within the meaning of that statute. Plaintiff contends that the term "injuries" is used in the statute in the narrow sense of bodily injury, exclusive of death—the outcome in her daughter's case. She notes that, in a variety of statutes, the legislature refers separately to damages for "injury" and damages for "death." *See, e.g.*, ORS 30.265(2) (public bodies immune from "claim for injury to or death of any person"); ORS 30.805(1) (no person may maintain "an action for damages for injury, death or loss" resulting from acts of person providing emergency medical assistance); ORS 31.600 (contributory negligence no bar to recovery in action to recovery damages "for death or injury to person or property"). She concludes that, in view of the legislature's ordinary practice, it is significant that it did *not* specify in ORS 82.010(2)(f) that the special interest rate applies to actions for injuries *or death* resulting from professional negligence.

We agree with the Court of Appeals, however, that the legislature intended the term "injuries" in ORS 82.010(2)(f) in the broad legal sense of a violation—*any* violation—of the legal rights of another. In considering the issue, we can think of no rational explanation for the statute that would accommodate the meaning that plaintiff contends for: Why provide a limited interest rate on money judgments in medical malpractice actions, but only if the patient did not die? Moreover, we think that it is significant that ORS 82.010(2)(f) uses the plural form—"injuries"—while all of plaintiff's statutory examples refer to "injury" and "death" in the singular. In plaintiff's examples, the singular form is used because the legislature is identifying a *category* of harms—bodily "injury," as opposed to "death" or "loss." The fact that ORS 82.010(2)(f) uses the plural form—"injuries"— demonstrates that the legislature was not focusing on a category of harms but on "injuries" in a diverse, collective sense.

■        In sum, we think that it is clear from text and context alone that the legislature used the term "injuries" in ORS 82.010(2)(f) to refer to any violation of a legal right. It follows that the money judgment at issue here—damages for injuries to plaintiff that resulted from medical negligence—is subject to the interest rate provided in ORS 82.010(2)(f).

■        Plaintiff argues, finally, that the trial court erred in applying ORS 82.010(2)(f) to her money judgment because that provision violates Article I, section 20, of the Oregon Constitution. Article I, section 20, provides:

> "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

However, we are unpersuaded by plaintiff's arguments and do not think that they warrant an extensive discussion. The trial court did not err.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**DURHAM, J.,** dissenting.

The trial jury in this wrongful death action returned a verdict for plaintiff that included an award of $1 million in noneconomic damages. After the court dismissed the jury, the court granted the motion of defendant PeaceHealth to reduce that part of the jury's award to $500,000 pursuant to ORS 31.710.[1] That statute places an upper limit, or "cap," of $500,000 on the noneconomic damages award "in any civil

---

[1] ORS 31.710 provides, in part:

"(1) [With certain specified exceptions], in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000.

"(2) As used in this section:

"* * * * *

"(b) 'Noneconomic damages' means subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment."

action seeking damages arising out of bodily injury, including * * * death * * * of any one person * * *."

Plaintiff argues that the elimination of one-half of the jury's noneconomic damages award pursuant to ORS 31.710 constitutes an interference with her right to a trial by jury under Article I, section 17, of the Oregon Constitution, which provides:

"In all civil cases the right of Trial by Jury shall remain inviolate."

According to plaintiff, this action is a "civil case" within the meaning of the constitutional phrase "all civil cases" and, as a result, the trial court's action of cutting the jury's noneconomic damages award in half undermines plaintiff's jury trial right.

The majority disagrees with that argument because, the majority contends, the common law did not recognize, in 1857 or now, "a right to unlimited damages in wrongful death actions * * *." 344 Or at 157. The majority also asserts that "wrongful death in Oregon is purely statutory and has no secure basis in the common law as it existed in 1857 * * *." *Id.* at 155-56. Consequently, according to the majority, the legislature is free to impose any cap that it desires on plaintiff's statutory wrongful death damages.

The majority's focus on the specific *claim* at issue here and whether a plaintiff had a common-law right to "unlimited damages" on *that claim* in 1857 is too narrow and, consequently, is not accurate. This court has held that the constitutional jury trial right refers to the historically recognized civil jurisdiction of the courts of law and their traditional practice of trying actions at law before juries. The constitutional right does not turn narrowly on whether, at statehood, the common law recognized a particular *claim* or "cause of action," as the majority contends.

Justice Walters also concludes that the majority's reasoning and result violate Article I, section 17, of the Oregon Constitution. I agree with that conclusion. I write separately to draw attention to an aspect of this court's case law under that provision that requires a different analysis and result from that offered by the majority.

To begin, the majority can take no solace in its observations that "plaintiff had * * * a [jury] trial" and that "wrongful death cases always have been tried to a jury." 344 Or at 156 n 12. If this action is one to which the constitutional right to trial by jury attaches, "Article I, section 17, prohibits the legislature from interfering with the full effect of a jury's assessment of noneconomic damages * * *." *Lakin v. Senco Products, Inc.*, 329 Or 62, 78, 987 P2d 463 (1999). Under Article I, section 17, the legislature may not create a scheme, applicable to a constitutionally protected jury trial, under which the court must cut in half a jury's verdict for noneconomic damages to satisfy a legislative cap. The jury trial right, as this court has held, "includes having a jury determine all issues of fact, not just those issues that remain after the legislature has narrowed the claims process." *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 297-98, 744 P2d 992 (1987).

The majority likewise inhibits rather than advances a correct interpretation of Article I, section 17, by relying heavily on *Greist v. Phillips*, 322 Or 281, 906 P2d 789 (1995), for the view that the legislature, consistently with Article I, section 17, may impose a cap on a jury's verdict for noneconomic damages because the legal action in question—wrongful death—exists by reason of a statute. That reliance is erroneous for two reasons. First, this court in *Lakin* reexamined and rejected a key conclusion in *Greist, i.e.*, that Oregon courts historically had authority to reduce the amount of a jury's verdict over the objection of the aggrieved party. *Lakin* concluded that that authority did not exist. 329 Or at 76. That flawed conclusion in *Greist* was the basis for the court's determination that no jury trial right applied in wrongful death proceedings. 322 Or at 295. Because that determination was legally unfounded, this court cannot any longer "assume without deciding," as *Greist* did, that a wrongful death action is "of like nature" to a personal injury action to which the right of jury trial attaches.[2]

---

[2] *Greist* stated that it assumed, without deciding, the correctness of the plaintiff's argument that a wrongful death action was "of like nature" to a personal injury action:

"Plaintiff argues, however, that the right to a jury trial is 'not strictly limited to cases in which it existed in 1859, when [Article I, section 17,] became

Second, by declaring that *Greist* was "distinguishable," *Lakin*, 329 Or at 77, the *Lakin* court concluded only that *Greist* provided no assistance to the resolution of the jury trial issue in *Lakin*; the court did not endorse, and had no occasion to endorse, the view stated in *Greist* that the statutory nature of an action at law, such as a wrongful death, eliminates the constitutional right to a jury trial. Other case law, that *Greist* never cited or discussed, shows the error of that view.

What, then, is the correct understanding of the scope of legal disputes to which the constitutional phrase "all civil cases" applies? In addressing that question, it is important to recall that Article VII (Amended), section 3, states, in part, that "[i]n *actions at law*, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved * * *." (Emphasis added.) In *Molodyh*, this court described the latter provision as an implied limitation on the range of "civil cases" to which Article I, section 17 applied and confirmed that the jury trial right does not apply literally in *all* civil matters. 304 Or at 295. *Molodyh* concerned a contract action regarding an insurance policy. Using the more recently adopted terminology in Article VII (Amended), section 3, the *Molodyh* court expressed the interpretive principle regarding the claimed jury trial right as follows:

> "[A]s long as this form of dispute is tried *as an action at law*, a jury trial is required."

*Id.* at 297 (emphasis added). Each constitutional provision provides helpful context for the determination of the meaning of the other. Although Article VII (Amended) creates a $750 "value in controversy" qualification on the jury trial

---

effective,' because the right extends to 'cases "of like nature"' to those that existed at common law at the time the constitution was adopted. Plaintiff argues that, in 1857, a right to jury trial existed for personal injury actions; that a wrongful death action is 'of like nature' to a personal injury action; and, thus, that the right to a jury trial attaches here. *Even accepting the premise that a wrongful death action is 'of like nature' to a personal injury action, plaintiff's argument would not prevail. When Article I, section 17, and the constitution were adopted, a jury's determination of the amount of damages to be awarded in tort actions was not protected from judicial alteration.*"

322 Or at 294 (emphasis added).

right, it appears that the forms of disputes that the two constitutional provisions address, *i.e.*, "civil cases" and "actions at law," are substantively identical. This court's case law, discussed below, confirms the correctness of that interpretation.

Article I, section 17, was a part of the original Oregon Constitution. This court's early cases construing that provision recited that it preserved the right to jury trial as it existed at or before statehood, but gave no clear indication of the nature of the "civil cases" to which the jury trial right attached before statehood. *See, e.g., Deane v. Willamette Bridge Co.*, 22 Or 167, 169, 29 P 440 (1892) ("This provision of the constitution creates no new right to trial by jury. It simply secures to suitors the right to trial by jury in all cases where that right existed at the time the constitution was adopted.").

This court explained the reach of Article I, section 17, in 1927 in *State v. 1920 Studebaker Touring Car et al*, 120 Or 254, 251 P 701 (1927). In *1920 Studebaker*, police had arrested plaintiff's husband after they discovered that he had been driving her car while carrying a container of liquor on his person. A grand jury refused to indict him for any crime.

The wife had no knowledge that her husband had used her car to transport intoxicating liquor. Nevertheless, the state commenced a statutory proceeding *in rem* to forfeit the vehicle to the state, because the husband had used it to transport a bottle of liquor. The statute authorized the wife to enter the forfeiture proceeding as a defendant by filing a statement of her interest in the property as well as any ground for a defense to forfeiture. The wife did so. The statute also expressly authorized the circuit court to try the forfeiture proceeding "without a jury." *Id.* at 257. The question before the court was whether that provision deprived the wife of her right under Article I, section 17, of the Oregon Constitution to try the statutory forfeiture proceeding before a jury.

The court began by reciting, as it had in previous cases, the broad proposition that the state constitution preserved the right to jury trial as it had existed at statehood:

"The right of trial by jury guaranteed by the Constitution of this state, embraces every case where it existed

before the adoption of the Constitution, and it is not within the power of the legislature to enact any law which deprives any litigant of that right. Hence if as contended for here, this appellant before the adoption of the Constitution of this state, in having the question determined of whether her property should be forfeited, would have been entitled to a jury trial as a matter of right, then this act, since it deprives her of such right, is unconstitutional and void * * *."

*Id.* at 259 (citations omitted).

The court then concluded that a forfeiture of property was analogous to the imposition of a penalty for a violation of law and that, traditionally, jury trials had accompanied efforts of the legal authorities to judicially enforce penalties, including in the context of felony criminal proceedings. The court then explained the three-part division of Oregon's courts at statehood that provided the specific context for the constitutional right to jury trials in "all civil cases":

"At the time when our state Constitution was adopted, courts were classified according to the nature and extent of their jurisdiction, their forms of proceeding, or the principles upon which they administered justice, either as courts of admiralty, courts of equity, or courts of law. Controversies concerning forfeitures of rights or property could be adjudicated only in some one or more of these courts, since in this country there were no other courts in which controversies of that nature could be adjudicated."

*Id.* at 261.

The court explained that, in courts of admiralty and courts of equity, no constitutional jury trial right applied:

"Courts of admiralty had jurisdiction to enforce forfeitures, without the aid or presence of a jury, but its jurisdiction was limited to cases arising under the admiralty or maritime law, and it never had jurisdiction to enforce a forfeiture where the seizure was made on land.

"Courts of equity have always refused to lend their aid to the enforcement of a forfeiture, 'It is a well-settled and familiar doctrine,' says Professor Pomeroy, 'that a court of equity will not interfere on behalf of the party entitled thereto, and enforce a forfeiture, but will leave him to his

legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture. The few apparent exceptions to this doctrine are not real exceptions, since they all depend upon other rules and principles. * * There are, in fact, no exceptions to this doctrine; those which appear to be exceptions are not so in realty.' 1 Pom. Eq. Juris (3 ed.), §§ 459, 460."

*Id.* at 261-62.

The court distinguished courts of equity and admiralty from "courts of law," in which the right to trial by jury, by tradition, did apply:

"Courts of law administer justice according to the rules of the common law, and are held for the trial of civil causes with the presence and aid of a jury, and where there are issues of fact to be determined, the trial ordinarily must be by jury."

*Id.* at 262. The phrase "rules of the common law" was a reference to the jurisdiction of the law courts (as opposed to courts of equity or admiralty) under the English and American common-law systems. That phrase did not refer only to specific claims or causes of action cognizable under the common law.

The court made that point clear in a succeeding passage that addressed and rejected the state's argument that the statutory character of the forfeiture proceeding, and its enactment after adoption of the state constitution, precluded any constitutional right to jury trial:

"It is argued that these proceedings concern matters in respect to prohibitory laws enacted since the adoption of the Constitution, and for that reason are not within the guarantee of the Constitution, and that controversies concerning violations of them may be disposed of by the courts in any manner the legislature sees fit to adopt. The answer to this contention is, that *the constitutional right of trial by jury is not to be narrowly construed, and is not limited strictly to those cases in which it had existed before the adoption of the Constitution, but is to be extended to cases of like nature as they may hereafter arise.* * * *

"* * * * *

"It is contended, however, that because the procedure authorized by this act is a special statutory proceeding *in rem* against certain specific offending property, it is a proceeding unknown to the common law, and therefore does not entitle the claimant or owner of the property sought to be forfeited to a jury trial.

"Where, as in this case, the seizure was made on land, and a libel or information was filed to condemn the seized property, which as in this case was purely a proceeding *in rem*, the rule before the adoption of the Constitution was and still is, that the suit is at common law, and that the claimants or owners of the property are entitled to a jury trial before a judgment can be passed forfeiting the seized property."

*Id.* at 263-64 (emphasis added).

The court also confirmed that the relevant inquiry is whether, under the traditional scheme of the common law, the underlying dispute would be resolved by a court of admiralty, a court of equity, or a court of law:

"In 12 R.C.L., page 133, in stating the law applicable to forfeitures, the authors say:

" 'In the trial of all cases of seizure, on land or on waters not navigable, the court sits as a court of common law, and as in all cases at common law where there are issues of fact to be determined, the trial must be by jury. In cases however of seizure made on navigable waters the court sits as a court of admiralty, and, as in cases of admiralty and maritime jurisdiction generally, it is settled that the trial is to be by the court. Although the two jurisdictions are vested in the same tribunal, they are as distinct from each other as if they were vested in different tribunals, and can no more be blended than a court of chancery with a court of common law.' "

*Id.* at 265-66.

The court then applied the analysis that it had set out. There was no contention that the forfeiture proceeding belonged in a court of admiralty, because the seizure of the car was made on land. After lengthy discussion, the court concluded that the statutory proceeding did not invoke the

remedial jurisdiction of a court of equity. That is, the statutory proceeding sought the divestment of the wife's property, not an injunction to restrain an illegal use of property. The fact that the statutory proceeding involved an action against the property itself did not alter that conclusion:

> "The fact that because the proceedings authorized under this act are *in rem* and not *in personam* does not change the character of the suit from that of a common-law action into a suit in equity, nor does it affect the question of the right of the owner to a trial by jury in this case."

*Id.* at 269.

The court ultimately concluded that the wife had a state constitutional right to a jury trial in the statutory forfeiture proceeding. The court declared that the legislature's requirement that the court should try the proceeding without a jury was "merely surplusage, and beyond the power of the legislature to enact * * *." *Id.* at 271. The court remanded the case for a new trial before a jury.[3]

This court has cited and followed *1920 Studebaker* consistently since 1927. Not once has this court reconsidered or withdrawn any aspect of the reasoning or result in that

---

[3] In *State v. Gann*, 254 Or 549, 463 P2d 570 (1969), this court quoted with approval the following passage of a dissenting opinion in *Dimick v. Schiedt*, 293 US 474, 55 S Ct 296, 79 L Ed 603 (1935), that confirmed that the Seventh Amendment to the United States Constitution served to retain the same distinction, to which I have referred, concerning the right to jury trial in actions at law, but not in proceedings in equity or in admiralty:

" 'The Seventh Amendment commands that "in suits at common law," the right to trial by jury shall be preserved, and that "no fact tried by a jury shall be otherwise re-examined by any court of the United States, than according to the rules of the common law." Such a provision of a great instrument of government, intended to endure for unnumbered generations, is concerned with substance and not with form. There is nothing in its history or language to suggest that the Amendment had any purpose but to preserve the essentials of the jury trial as it was known to the common law before the adoption of the Constitution. For that reason the Court has often refused to construe it as intended to perpetuate in changeless form the *minutiae* of trial practice as it existed in the English courts in 1971. *From the beginning, its language has been regarded as but subservient to the single purpose of the Amendment, to preserve the essentials of the jury trial in actions at law, serving to distinguish them from suits in equity and admiralty,* see *Parsons v. Bedford*, 3 Pet. 433, 446, and to safeguard the jury's function from any encroachment which the common law did not permit.' "

254 Or at 557-58 (emphasis added; citation omitted).

case, and it remains today as the most detailed examination in our case law of the classes of proceedings to which the right to jury trial applies under Article I, section 17. Yet, the majority cites *1920 Studebaker*, but fails to follow the analysis in that case, and ultimately concludes, in direct opposition to *1920 Studebaker*'s holding, that the statutory nature of a wrongful death proceeding precludes any right to a jury trial. That answer simply ignores the analytical approach that our case law requires.

Any analysis of the question whether the jury trial right applies here must begin with the statute that describes the wrongful death action, ORS 30.020, which provides, in part:

"(1)  When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's surviving spouse, surviving children, surviving parents and other individuals, if any, who under the law of intestate succession of the state of the decedent's domicile would be entitled to inherit the personal property of the decedent, and for the benefit of any stepchild or stepparent whether that stepchild or stepparent would be entitled to inherit the personal property of the decedent or not, may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission. The action shall be commenced within three years after the injury causing the death of the decedent is discovered or reasonably should have been discovered by the decedent, by the personal representative or by a person for whose benefit the action may be brought under this section if that person is not the wrongdoer.

"* * * * *

"(2)  In an action under this section damages may be awarded in an amount which:

"(a)  Includes reasonable charges necessarily incurred for doctors' services, hospital services, nursing services, other medical services, burial services and memorial services rendered for the decedent;

"(b)  Would justly, fairly and reasonably have compensated the decedent for disability, pain, suffering and loss of

income during the period between injury to the decedent and the decedent's death;

"(c) Justly, fairly and reasonably compensates for pecuniary loss to the decedent's estate;

"(d) Justly, fairly and reasonably compensates the decedent's spouse, children, stepchildren, stepparents and parents for pecuniary loss and for loss of the society, companionship and services of the decedent; and

"(e) Separately stated in finding or verdict, the punitive damages, if any, which the decedent would have been entitled to recover from the wrongdoer if the decedent had lived."

In ORS 30.020, the legislature has created a statutory extension of the traditional common-law claim for personal injury to authorize a recovery of damages by the injured party's family members when the injury is so severe that it results in death. The vehicle for that recovery is an "action against the wrongdoer." ORS 30.020(1). The authorized remedy is an award of noneconomic, economic, and punitive damages against the wrongdoer. ORS 30.020(2).

ORS 30.020 embodies an "action at law" and a "civil case" within the meaning of the jury trial guarantees in our state constitution. Or Const, Art I, § 17; Art VII (Amended), § 3. Stated differently, the courts of law established in the common law before statehood would have addressed the action at law that the wrongful death statute authorizes, and would have tried the action to a jury. In no sense is that action one that would have been addressed at common law by courts of equity or courts of admiralty.

It is unnecessary to decide whether the common law recognized, before statehood, a specific tort claim for wrongful death. The jury trial right, according to *1920 Studebaker*, extends to actions at law that were known at statehood and also to cases of like nature that may arise after statehood. The legislature has complete authority, for example, to authorize injured parties to bring a statutorily defined action at law in Oregon courts to recover damages from a tortfeasor for causing a wrongful death. Such a statutory action at law is a case of like nature to an ordinary common-law tort claim in which the injured party can recover a similar range of

damages, even though the injury stops short of causing death. Properly interpreted, the constitutional right to a jury trial applies to the trial of each of those actions at law.

The majority errs in concluding that the application of the statutory damages cap in ORS 31.710 to the jury's verdict here is consistent with plaintiff's right to jury trial. *Lakin* explains why application of a damages cap interferes with full effect of a jury's assessment of damages in an action at law. 329 Or at 78. By the same reasoning, the conclusion is inescapable that cutting the jury's noneconomic damages in half, pursuant to a statutory damages cap, constitutes a deprivation of the constitutional right to jury trial.

*Jensen v. Whitlow*, 334 Or 412, 51 P3d 599 (2002), is not to the contrary. This court stressed repeatedly in that case that it was resolving a facial challenge to a statute, ORS 30.265(1), that eliminated a tort remedy against an individual public employee tortfeasor and substituted instead a capped damages remedy against the public body that employed the tortfeasor. Before addressing the jury trial issue under Article I, section 17, the court determined that the statute survived a facial challenge under the Remedy Clause in Article I, section 10. That was so because, in at least some cases, a damages award below the statutory cap against the public body would constitute a sufficient remedy under Article I, section 10. *Id.* at 421. Turning to the jury trial issue, the court repeated that, in the context of the facial challenge, the statute had permissibly eliminated the tort remedy against the individual tortfeasors. As a result, the plaintiff had no cognizable claim against those defendants. The court stated: "It follows that there is no claim to which a right to a jury trial can attach. Thus, ORS 30.265(1), on its face, does not violate Article I, section 17." *Id.* at 422. In the present case, it is uncontested that ORS 30.020 does authorize an action at law by plaintiff against defendants for wrongful death. Thus, the premise for the *Jensen* court's response, on a facial challenge, under Article I, section 17, is absent here.

It must also be noted that *Jensen* repeated a quotation from *Lakin* that purported to present a shorthand version of the holding in *Molodyh*, limiting the jury trial right to " 'civil actions for which the common law provided a jury trial

when the Oregon Constitution was adopted in 1857[.]'"
*Jensen*, 334 Or at 422 (quoting *Lakin*, and noting that *Lakin*
cited *Molodyh*) (brackets in *Jensen*). That shortened version
does not describe the rule in *Molodyh* accurately, because it
omits "cases of like nature" from the scope of the right of jury
trial. The majority repeats that error here. The accurate quo-
tation from *Molodyh* is:

> "This court also has stated that a jury trial is guaran-
> teed only in those *classes of cases* in which the right was
> customary at the time the constitution was adopted *or in
> cases of like nature.*"

*Molodyh*, 304 Or at 295 (emphases added). For that proposi-
tion, *Molodyh* cited three cases, including *1920 Studebaker*.
*Id.* The "cases of like nature" aspect of the state constitu-
tional jury trial right thus has been settled law in Oregon for
at least 80 years.

In order to provide some semblance of reasoning to
support its result, the majority takes several odd steps that
do not withstand scrutiny. First, the majority cites but fails to
engage in any analysis of the key authorities that support
recognition of the jury trial right here: *1920 Studebaker* and
*Molodyh*. Next, as noted, the majority relies extensively on
statements about legislative and judicial authority to limit
damage awards in *Greist* that this court undermined and
abandoned in *Lakin*. The majority then asserts that plaintiff
seeks to use the constitutional jury trial right to create or
retain a substantive claim or theory of recovery. That is not
accurate. ORS 30.020 grants plaintiff authority to bring the
action at law that she had brought and that action closely
resembles other actions at law that, at Oregon's statehood,
were traditionally accorded a jury trial in the courts of law.
The majority's unsuccessful search for an exact match at
common law for the current statutory wrongful death action
at law disregards *1920 Studebaker* and incorrectly narrows
the intended flexible application of the jury trial right to
actions at law "of like nature" that Oregon law may recognize
after statehood. The correct question—whether the statutory
wrongful death action is, in constitutional terms, a "civil
case" and an "action at law," or a case of like nature—is one
that the majority never addresses.

Oregon's constitution commits this state to protecting the right to jury trial in all civil cases and in all actions at law where the controversy exceeds $750 in value. In a textual command that should have particular significance for the judiciary, Article I, section 17, declares that the right of jury trial "shall remain inviolate." Those three words, written at statehood by the framers, is a candid acknowledgment that, over time, assaults on the right to jury trial will come not only through efforts at overt withdrawal, as in *1920 Studebaker*, but also through the indirect effects of statutes and rules that condition and qualify the right by more subtle means. Those words charge the judiciary with an important duty: to guard the people's right to jury trial against erosion, including from complex statutory schemes that enjoy the support of powerful legislative majorities.

Unlike other constitutional provisions, for which the framers intended a fixed and inflexible application over time, the right of jury trial is, and was meant to be, timeless. The right applies to actions at law never imagined, let alone legally recognized, at statehood. The majority violates the true conception of the right to jury trial by confining it to non-statutory claims that Oregon law recognized before statehood. Qualifications of that sort have no basis in the constitutional text or in our precedents that govern the right to jury trial. I cannot join in their creation here.

Because plaintiff's challenge to the statutory damages cap under Article I, section 17 is well taken, I do not address plaintiff's challenge to the damages cap under the Remedy Clause in Article I, section 10.

I respectfully dissent.

Walters, J., joins in this dissent.

**WALTERS, J.,** dissenting.

The right of trial by jury "occupies so firm a place in our history and jurisprudence[,]" *Dimick v. Schiedt*, 293 US 474, 486, 55 S Ct 296, 79 L Ed 603 (1935), that it can be said to define our system of justice. So central is the right to jury trial that this court should not retreat from principles it has

recognized as essential to the preservation of that right without doing so directly and with clear justification. Because the majority has so retreated, I must dissent.

Since 1927 the court has consistently held that the right to jury trial is "not to be narrowly construed and is not limited strictly to those cases in which it had existed before the adoption of the Constitution, but is to be extended to cases *of like nature* as they may hereafter arise." *State v. 1920 Studebaker Touring Car et al*, 120 Or 254, 263, 251 P 701 (1927) (emphasis added). *Accord Jensen v. Whitlow*, 334 Or 412, 421, 51 P3d 599 (2002); *Lakin v. Senco Products, Inc.*, 329 Or 62, 82, 987 P2d 463 (1999); *Greist v. Phillips*, 322 Or 281, 293, 906 P2d 789 (1995); *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 295, 744 P2d 992 (1987); *Cornelison v. Seabold*, 254 Or 401, 404-05, 460 P2d 1009 (1969).

In 1999, in *Lakin*, the court unanimously held that the right to jury trial is a right of substance that withstands legislative interference. 329 Or at 82. The court held that a plaintiff with a right to jury trial has the right to have the jury determine the facts in the case, including the amount of damages to be awarded, and that a statutory cap on damages unconstitutionally limits the jury's fact-finding ability. The court explained the reach of its holding as follows:

> "We conclude that Article I, section 17, prohibits the legislature from interfering with the full effect of a jury's assessment of noneconomic damages, at least as to civil cases in which the right to jury trial was customary in 1857, *or in cases of like nature*."

329 Or at 78 (emphasis added).

Thus, the appropriate paradigm for analysis of the issue presented here is straightforward: Is an action for negligently caused death "of like nature" to other negligence actions for which the right to jury trial existed at common law? If so, the plaintiff has a right to jury trial, and Article I, section 17, prohibits the legislature from interfering with the jury's fact-finding ability and assessment of damages.

The majority begins correctly and states plaintiff's assertion plainly: "[Plaintiff's] wrongful death action is 'of like nature' to an ordinary common-law personal injury

action." 344 Or at 155. Then, without directly addressing that assertion, and without a bow to the step it skips, the majority questions whether plaintiff "has the same right to a jury determination of damages, unfettered by legislative or judicial interference, that a plaintiff in an ordinary personal injury action enjoys under this court's Article I, section 17, decision in *Lakin*." 344 Or at 155 (emphasis omitted). Without deciding that plaintiff does not have a right to trial by jury, the majority concludes that she does not have a right to have a jury assess her damages "[b]ecause the common law does not, and did not in 1857, recognize a right to unlimited damages in wrongful death actions[.]" 344 Or at 156-57. The new bar the majority raises subverts both the principle that the right to jury trial is not confined to actions recognized at common law and the principle that the right to jury trial is a right of substance with which the legislature cannot interfere.

In 1857 there was ordinarily a right to jury trial for causes of action tried to courts of law. *1920 Studebaker*, 120 Or at 262. At that time, courts were classified as either courts of admiralty, courts of equity, or courts of law:

> "At the time when our state Constitution was adopted, courts were classified according to the nature and extent of their jurisdiction, their forms of proceeding, or the principles upon which they administered justice, either as courts of admiralty, courts of equity, or courts of law."

*Id.* at 261. Cases tried to courts of admiralty or courts of equity could be tried to a judge, but juries ordinarily determined issues of fact in actions at law:

> "Courts of law administer justice according to the rules of the common law, and are held for the trial of civil causes with the presence and aid of a jury, and where there are issues of fact to be determined, the trial ordinarily must be by jury."

*Id.* at 262.

In *1920 Studebaker*, the state seized an automobile that had been used to transport liquor and brought a case *in rem* against the vehicle seeking its forfeiture. The state

brought suit pursuant to a statute that was enacted after 1857, which permitted trial to the court, without a jury. The owner of the car protested, claiming that the statute violated her right to jury trial under Article I, section 17, of the Oregon Constitution. The state and the dissent argued that the statute created a special *in rem* procedure unknown at common law and that the action was not, therefore, within the jury trial guarantee of the constitution. The dissent stated its position succinctly: "It would seem that the power which created the proceeding could also prescribe the procedure." 120 Or at 276 (Coshow, J., dissenting). The majority view, the prevailing view, was that the right to jury trial was not limited to actions recognized prior to 1857. The court reasoned that the right to jury trial extends to cases "of like nature" to those that existed before the adoption of the constitution, and that the legislature does not have the prerogative to eliminate the litigants' rights to jury trial in such actions. The court held that because the new statutory action was not an action in admiralty or equity, but was a species of forfeiture actions, which were tried to juries at common law, the car owner had a right to have a jury determine the facts. *Id.* at 264, 269.

In 1987, the court relied on that 1927 case when it considered the constitutionality of a statutory requirement, included in a fire insurance policy, that an appraiser determine the amount of loss. *Molodyh*, 304 Or at 295. The court held that the Oregon Constitution mandates a jury trial "in those *classes of cases* in which the right was customary at the time the constitution was adopted or in *cases of like nature*." *Id.* (emphases added). The court considered the insureds' action to recover their losses to be in the same class of cases as a contract action and reasoned that "as long as this form of dispute is tried as an action at law, a jury trial is required." *Id.* at 296-97. The *Molodyh* court explained the meaning of the right to jury trial: "This right includes having a jury determine all issues of fact, not just those issues that remain after the legislature has narrowed the claims process." *Id.* at 297-98.

Applying those principles here is not difficult. A wrongful death action is an action at law and it is therefore in the same class of cases as other actions at law for which

Article I, section 17, guarantees a right to jury trial.[1] Furthermore, a wrongful death action is simply a negligence action in which the injury ultimately results in death. A wrongful death claim is one that "the decedent might have maintained * * *, had the decedent lived, against the wrongdoer for an injury done by the same act or omission." ORS 30.020(1). That claim may arise while the decedent is still alive, and it arises where the injurious act, and not the death, occurs. *See Howell v. Willamette Urology, P.C.*, 344 Or 124, 129, 130, 178 P3d 220 (so stating). "[T]he purpose of a wrongful death action is to remove death as a bar to bringing the claim, not to make death the central event of the action." *Id.* at 129.

The majority does not reject my conclusion that a wrongful death action is "of like nature" to a common-law negligence action. Instead, the majority states that, in the case at bar, there is no "separate question" respecting trial by jury because plaintiff tried her case to a jury and "so far as we are aware, wrongful death cases always have been tried to a jury." 344 Or at 156 n 12. The majority also refers to "any right to a jury trial that plaintiff might have[,]" indicating that it may agree that plaintiff does have a right to jury trial. 344 Or at 157.

The majority's refusal to directly state and confront the obvious conclusion that a wrongful death plaintiff has a right to jury trial allows it to sidestep the logical implication of that conclusion. A plaintiff who has a right to jury trial has a right to have the jury decide all the facts in that action,

---

[1] It is not surprising, therefore, that the reported appellate decisions reveal that wrongful death cases have been tried to juries without question or objection since 1892. *Sides v. Driscoll*, 244 Or 76, 415 P2d 760 (1966); *Roehr v. Bean*, 237 Or 599, 392 P2d 248 (1964); *Durkoop v. Mishler et al*, 233 Or 243, 378 P2d 267 (1963); *Sturm v. Smelcer*, 235 Or 251, 384 P2d 212 (1963); *Welter, Adm'x v. M & M Woodworking Co.*, 216 Or 266, 338 P2d 651 (1959); *Morey, Administratrix v. Redifer et al*, 204 Or 194, 264 P2d 418 (1955); *Adair, Adm'x v. Valley Flying Service*, 196 Or 479, 250 P2d 104 (1952); *Scott v. Brogan*, 157 Or 549, 73 P2d 688 (1937); *Rekdahl v. Cheney*, 134 Or 251, 293 P 412 (1930); *Gillilan v. Portland Crematorium Assn.*, 120 Or 286, 249 P 627 (1927); *Bloomquist v. City of La Grande*, 120 Or 19, 251 P 252 (1926); *Gray v. Hammond Lumber Co. et al*, 113 Or 570, 232 P 637 (1925); *Yovovich v. Falls City Lumber Co.*, 76 Or 585, 149 P 941 (1915); *Sullivan v. Wakefield*, 59 Or 401, 117 P 311 (1911); *Carlson v. Oregon Short Line Ry. Co.*, 21 Or 450, 28 P 497 (1892).

including damages, without legislative limitation. *Lakin*, 329 Or at 82. Logically, then, if plaintiff in the case at bar has a right to jury trial, she has the right to have the jury assess the full extent of her damages without legislative interference. The majority avoids that result, not by concluding that plaintiff does not have a right to jury trial, but by declaring that plaintiff does not have a different right: *"a right to unlimited damages."* 344 Or at 157 (emphasis added). The majority states:

> "Because the common law does not, and did not in 1857, recognize a right to unlimited damages in wrongful death actions, the only relevant source of substantive law respecting damages is the statutory law, which expressly places a cap on noneconomic damages."

*Id.* at 156-57.

If, as the majority opines, the common law did not recognize wrongful death actions at all in 1857,[2] the common law could not possibly have recognized the measure of damages in such actions. But because the right to jury trial extends to *actions* that were not recognized by the common law in *1857*, that right also extends to actions in which the measure of *damages had not been determined in 1857. The court in Lakin* did not decide that the plaintiff had a right to have a jury determine his damages because a plaintiff in an ordinary negligence action had a "right to unlimited damages" in 1857. The court decided that the plaintiff had a right to have a jury determine his damages because the amount of those damages was a question of fact and, throughout history, it was the function of the *jury*, not the *legislature,* to decide questions of fact. 329 Or at 73. The court reached its conclusion because " '[t]he amount of damages * * * from the beginning of trial by jury, was a "fact" to be found by the jurors.' " *Id.* (quoting Charles T. McCormick, *Handbook on the Law of Damages* § 6, 24 (1935)).

The majority quotes *Jensen* for the proposition that "Article I, section 17, is not a source of law that creates or

---

[2] The majority takes the position that the common law had not "coalesced into a clearly defined common-law civil action for wrongful death" by 1857 when Oregon, as well as other legislatures, "stepped in to the breach." 344 Or at 151.

retains a substantive claim or theory of recovery in favor of any party." 334 Or at 422. I agree that Article I, section 17, does not create a right to bring a wrongful death action. By the same token, Article I, section 17, does not create a right to bring a common-law negligence action. A plaintiff in a wrongful death action brings suit pursuant to ORS 30.020. A plaintiff in an ordinary negligence action relies on the common law to bring that claim. In both instances, plaintiffs' rights to bring their claims arise from sources of law outside of Article I, section 17. Similarly, the measure of damages for both actions is determined by sources outside of Article I, section 17. Because both actions are actions at law, "of like nature," both plaintiffs have the right to have a jury determine the facts in those actions—including damages—without legislative interference.

The majority follows its quote from *Jensen* with the statement that, "[u]nder that rule, plaintiff is entitled to a jury's determination of her damages, both in type and amount, only to the extent that * * * the statute[ ] pertaining to her claim so provides." 344 Or at 155. The majority does not explain, however, why that is so, and it is not logic that compels that conclusion. The "rule" that Article I, section 17, does not grant a plaintiff a right to bring a claim does not speak to, much less dictate, whether a plaintiff who *does* have a right to bring a claim also has the right to have a jury determine her damages in that claim. Article I, section 17, *is not* the source of any claim, statutory or common law, but it *is* the source of the right to jury trial. In *Lakin*, the statute pertaining to the plaintiff's claim imposed a limitation on the damages he could receive. 329 Or 62 (considering ORS 18.560). But the court nevertheless held that statutory cap unconstitutional, not because the plaintiff had a "right" to damages rooted outside Article I, section 17, but because the plaintiff brought an action at law, and a jury, and not the legislature, must decide the facts in such an action. 329 Or at 79, 82.

The majority cites no other authority for its conclusion that, if the legislature gives birth to an action, the legislature can eliminate the constitutional right to have a jury decide the facts in that action.[3] Actually, the opposite has

---

[3] The majority discusses *Greist*, 322 Or at 293-94, and correctly states that, in that case, the court concluded that, because there was no wrongful death action in

been true for nearly 100 years, the point with which I began my dissent. In *1920 Studebaker*, the court considered and rejected the argument that the legislative power to prescribe an action included the power to preclude the jury from finding the facts in that action. 120 Or at 263. In *Molodyh*, the applicable statute and the rights it provided were unknown at common law. Nevertheless, the plaintiff had a right to have a jury determine "all issues of fact, not just those issues that remain after the legislature has narrowed the claims process." 304 Or at 297-98.

The majority disregards those cases and does not explain in any satisfactory way why it builds the cornerstone of our judicial system on the happenstance of whether an action was initially recognized by the courts or the legislature and in what year.[4] Our constitution does not hang the right to jury trial on such anomalies. It provides that the right to trial by jury shall remain inviolate "in all civil cases." Or Const, Art I, § 17.

The right to trial by jury is not to be narrowly construed, and yet that is exactly the rule of construction the

---

1857, there was no right to jury trial of such an action *at that time.* 344 Or at 153-54. The majority does not completely explain, however, that the *Greist* court then went on to consider whether a wrongful death action is "of like nature" to claims that did exist at the time the constitution was adopted, assumed that it is for purposes of argument, but nevertheless concluded that "a jury's determination of the amount of damages to be awarded in tort actions was not protected from judicial alteration," 322 Or at 294, a conclusion that the court disavowed in *Lakin*, 329 Or at 76-77.

[4] The majority explains in an earlier portion of its opinion that whether courts or legislatures were the first to recognize actions for wrongful death was purely fortuitous. 344 Or at 151. The majority fails to note, however, that when the legislature first acted in Oregon, it did not necessarily intend to "cap" damages in wrongful death cases. When the Oregon legislature acted in 1862, it adopted two provisions permitting wrongful death actions. One permitted personal representatives of deceased persons to bring actions for damages not exceeding $5,000. 344 Or at 156. But, an earlier section of that code gave parents, like plaintiff in the case at bar, a right to bring actions for the death of their children and did not limit the damages a parent could seek. Section 33 of the code provided: "A father, or in the case of the death or desertion of his family, the mother, may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward." General Laws of Oregon, Civ Code, ch I, title III, § 33, p 111 (Deady & Lane 1843-1872). The majority does not explain why the present right to jury trial should turn on whether a court or a jury was the first to consider a wrongful death action or on the vagaries of the statutes removing death as a bar to bringing an action for negligently caused death.

majority has adopted. In doing so, the majority raises questions about the future vitality of that most precious right. If we limit the substantive right to jury trial to those actions that existed in 1857, how, over time, will that right remain inviolate? Will not the court or the legislature be called upon to identify and redress new harms not known in 1857? Cannot the legislature, under the majority's decision, limit or eliminate the jury's right to decide the facts in those actions? How will the right to trial by jury remain robust in the days to come if the legislature can scale it back to times of old?

The majority's reference to some other, undefined, "right to a jury trial that plaintiff *might* have under Article I, section 17," 344 Or at 157 (emphasis added), provides scant consolation. The 12 in whom our constitution places its trust are the 12 who hear each word spoken from the stand, and the silences between. They are the 12 whose eyes watch others' eyes and take their measure. By their absence, legislators cannot fill that role. Legislators may decide the categories of harm the state should address and the categories of persons who may bring claims in courts of law. But only jurors can shake right out from wrong for individual human beings and do them justice.

Since long before 1857 it has been the role of the jury to find the facts, including the fact of damages, in civil actions at law. The constitution requires that the jury's historical fact-finding function continue in the future and remain inviolate. I respectfully dissent.

Durham, J., joins in this dissent.